IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VICKI L. SCHLUCKEBIER, | ) | |
| | ) | |
| Plaintiff, | ) | 4:11CV3111 |
| | ) | |
| v. | ) | |
| | ) | |
| ASSISTED LIVING CONCEPTS, | ) | **MEMORANDUM** |
| Inc., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an employment discrimination action stemming from the termination of Plaintiff's employment by Defendant while Plaintiff was on short-term disability leave due to pregnancy. Plaintiff has brought claims under the Family Medical Leave Act[1] ("FMLA"), the Pregnancy Discrimination Act[2] ("PDA"), Title VII of the Civil Rights Act of 1964[3], the Nebraska Wage Payment and Collection Act[4], and the Nebraska Fair Employment Practice Act[5], as well as claims for breach of contract (or, alternatively,

---

[1] 29 U.S.C. §§ 2601-2654. Section 2615(a)(1) of the FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights provided under the FMLA.

[2] 42 U.S.C. § 2000e(k) ("women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected").

[3] 42 U.S.C. §§ 2000e to 2000e-17 (unlawful employment practice to discharge or discriminate against employee because of employee's sex).

[4] Neb. Rev. Stat. §§ 48-1228 to 48-1232.

[5] Neb. Rev. Stat. §§ 48-1101 to 48-1125. Plaintiff makes claims under sections 48-1111(2) ("Women affected by pregnancy, childbirth . . . shall be treated the same

promissory estoppel), wrongful termination, and intentional infliction of emotional distress. (Filing 1, Complaint.)

Plaintiff has moved for partial summary judgment (filing 33) on her claims under the FMLA, PDA, and the Nebraska Wage Payment and Collection Act. Defendant has moved for summary judgment (filing 38) on all of Plaintiff's claims.

## I. BACKGROUND

On March 2, 2009, Plaintiff began her job as the residence director of one of Defendant's assisted-living facilities located in Seward, Nebraska. In July 2009, Plaintiff advised her supervisor, Tim Dunne, that she was pregnant. Plaintiff has filed evidence indicating that after her pregnancy announcement, Dunne treated her differently by becoming less available, causing her to be short-staffed, holding her to higher standards than other residence directors in similar facilities, and making stereotypical comments regarding Plaintiff's pregnancy. Defendant has presented evidence to the contrary.

Due to her pregnancy, Plaintiff began an approved period of short-term disability leave on January 20, 2010, and she gave birth on January 21, 2010. While on leave, she received a confirmation letter dated February 5, 2010, from Defendant's benefits coordinator stating in relevant part:

> We have received and approved your request for a medical leave of absence. As such, you are eligible to receive short-term disability through Assisted Living Concepts based on medical necessity. . . .
>
> You are eligible for short-term disability pay as follows:

---

for all employment-related purposes, including receipt of employee benefits.") and 48-1104 (unlawful employment practice for employer to discharge or harass employee because of sex).

    Beginning Date: 1/21/10

    Pay through date: 3/3/10

(Filing 39-2.)

    Four days later, on February 9, 2010, Plaintiff received a voice-mail message from Dunne terminating her employment and her disability leave benefits.[6] Had Plaintiff been allowed to remain employed and take her full term of disability leave (from January 20 to March 3, 2010) as provided in the February 5 confirmation letter, she would have qualified for FMLA leave on March 2, 2010, her one-year employment anniversary date.

    Plaintiff claims, and Defendant admits, that while Plaintiff was on leave, Defendant changed its short-term leave policy for employees who had not been with Defendant for a year (like Plaintiff) to provide that "a leave of absence . . . [is] no more than seven days and then they would have to . . . use their . . . personal time or vacation time."[7] (Filing 35-2 at CM/ECF p. 4.) Even though Plaintiff "agreed to the leave of

---

[6] In a subsequent Nebraska Department of Labor Unemployment Benefits Hearing, Dunne was asked if Plaintiff quit or was fired, and he responded, "[s]he was released while on her unprotected leave of absence." He stated that the reason for Plaintiff's leave of absence was "[p]regnancy" and "based upon the requirements of the position and her job, we felt it would be in our best interests and the people that we served at that residence to hire another candidate." (Filing 35-2 at CM/ECF p. 4.)

[7] It is interesting to note that some of the evidence submitted by Defendant shows that the policy granting short-term disability benefits to those who had been employed less than one year was adopted in November 2009, and the policy removing such benefits was not adopted until April 2010. (Filing 39-5 at CM/ECF pp. 36, 43, 47.) Contrary to this evidence, Dunne testified that this policy change was made between January 15 and January 30, 2010, and that his voice-mail message terminating Plaintiff "was that the policy had changed." (Filing 35-2 at CM/ECF pp. 4, 6.) This raises the question whether an unofficial, unpublicized policy change was applied to Plaintiff to deny her short-term disability benefits that she had been previously promised by

3

absence prior to when the policy change took effect," Plaintiff asserts that the Defendant applied the policy to her, and the application of this change to her effectively denied her FMLA leave.[8] (Filing 35-2 at CM/ECF p. 4.)

Defendant disagrees, claiming that:

> [t]he decision to terminate Plaintiff's employment was not made because of a change in the leave of absence policy adopted by Assisted Living Concepts. Plaintiff was warned that because of the critical nature of her position[9], that her position would continue only until a replacement was found for her at Greene House. Plaintiff was never assured or guaranteed the right to keep her position at Greene House or any other position while she was on leave for her pregnancy.

(Filing 39-5 at CM/ECF p. 35 (footnote added).)

---

Defendant and, if so, the motive for doing so.

[8]Plaintiff claims that Defendant advised her "that since [she] would be gone six weeks, [she] would be able to cross over to FMLA, which did then guarantee [her the] same job back under the . . . FMLA." (Filing 35-3 at CM/ECF p. 27.) Defendant does "not recall any specific conversation" to this effect and claims that such a comment would have been unlikely because it was "not consistent with our policy." (Filing 39-5 at CM/ECF p. 35.)

[9]While Defendant claims that it terminated Plaintiff because of "the critical nature of the position," (Filing 37 at CM/ECF p. 24), Defendant did not plead an FMLA "key employee" defense. (Filing 10, Answer.) *See* 29 C.F.R. § 825.216(b), as revised in 78 FR 8834-01 (2013) (employer may deny job restoration to key employees if necessary to prevent substantial and grievous economic injury to employer's operations); 29 C.F.R. § 825.217(c), as revised in 78 FR 8834-01(2013) (defining "key employee"); *Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494, 498 (8th Cir. 2010) (affirmative defense not raised in defendant's responsive pleadings is generally forfeited, but because issue was included in pretrial order, defense could be asserted at trial because issues identified in pretrial order supersede the pleadings).

4

Plaintiff testified by deposition that after she was terminated, Dunne deleted everything on her computer and threw everything in her office away, including an expense report with original receipts claiming hundreds of dollars in reimbursement and her W-2. (Filing 35-3 at CM/ECF pp. 30-31.) Again, Defendant has filed evidence to the contrary. (Filing 39-2 at CM/ECF p. 37.)

Finally, Tim Dunne has filed a declaration and exhibits indicating that Plaintiff's fellow employees were dissatisfied with her performance and the condition of her office, as well as the existence of "issues involving staffing, work load, and work hours that existed shortly after [Plaintiff] began her employment." (Filing 39-5.)

## II. STANDARD OF REVIEW

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Rynders v. Williams*, 650 F.3d 1188, 1194 (8th Cir. 2011) (quotation & citation omitted). The jury, not the court, is responsible for weighing the evidence and making credibility determinations. *Id.* "'[T]he court should deny summary judgment if there is sufficient evidence for a jury to return a verdict for the nonmoving party.'" *Id.* (quoting *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 911 (8th Cir. 2011)).

## III. MOTIONS FOR SUMMARY JUDGMENT

The parties have submitted numerous affidavits, deposition and administrative hearing transcripts, e-mail communications, copies of correspondence, and discovery documents in connection with their summary judgment motions. Because determining the merits of Plaintiff's claims—especially whether Defendant terminated Plaintiff's employment because she inquired about, or gave notice of her desire to use, FMLA leave once she was so eligible, or because of her gender or pregnancy, and whether

5

there was a reason for Plaintiff's discharge unrelated to these factors—hinges on the credibility of the witnesses who provided this evidence, I shall deny the parties' motions for summary judgment. Fed. R. Civ. P. 56 (Advisory Committee Note to 1963 Amendment) ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.").

Accordingly,

IT IS ORDERED:

1. The parties' motions for summary judgment (Filings 33 & 38) are denied; and

2. Defendant's motion to strike the declaration of Fawn Ienn (Filing 57) is denied as moot, as the court did not consider the declaration in reaching its decision to deny the motions for summary judgment.

DATED this 12th day of February, 2013.

> BY THE COURT:
> s/ *Richard G. Kopf*
> Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.